IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| KTD CORP. and DYMIN SYSTEMS, INC. D/B/A THE WIRELESS GUYS,<br><br>  Plaintiffs,<br><br>vs.<br><br>NEXTEL PARTNERS, INC, NPCR, INC. and DOUGLAS JAMES,<br><br>  Defendants. | **Case No. 4:06-CV-424**<br><br><br><br>**AMENDED COMPLAINT AND JURY DEMAND** |

1.      That at all times material hereto, the Plaintiffs are Iowa Corporations.

2.      That at all times material hereto, the Defendant, Nextel Partners, Inc. is a Delaware Corporation with its principal place of business in Kirkland, Washington.

3.      That at all times material hereto, the Defendant, NPCR, Inc. is a Delaware Corporation with its principal place of business in Kirkland, Washington.

4.      That at all times material hereto, the Defendant, Douglas James is a resident of Polk County, Iowa.

5.      That the Plaintiffs collectively, KTD Corp., Dymin Systems, Inc. d/b/a The Wireless Guys, operate pursuant to an independent sale professional agreement by and between KTD Corp. d/b/a The Wireless Guys and NPCR, Inc. and Nextel Partners, Inc. dated March 20, 2003, which attached hereto and incorporated herein by this reference as Exhibit A.

6.      That at all times material hereto, Douglas James was and is an employee and authorized representative of the Defendants, Nextel Partners, Inc. and NPCR, Inc.



EXHIBIT

tabbies®

A

7.     That pursuant to the terms of the contract the Plaintiffs sold products with the corporate Defendants, Nextel Partners, Inc. and NPCR, Inc. in exchange for compensation more particularly specified in the contract attached hereto as Exhibit A.

8.     That outside the terms of the written contract, the Defendants, collectively, began to impose unauthorized charge backs and manual adjustments from the compensation payable to Plaintiffs under the terms of the contract.

9.     Additionally, the Defendants, and each of them, agreed either individually or through their authorized representatives that certain customers sold by Plaintiffs would be given certain inducements including but not limited to, zero dollar rate plans, phones at no charge and other inducements that the Defendants and each of them, failed to honor causing damage to the Plaintiffs' representative, business and good will.

10.     The Plaintiffs and each of them, as a result of the foregoing, demanded refunds for wrongfully withheld compensation due pursuant to the terms of the contract as well as demanded an inspection of the books, records and facilities of the Defendants pursuant to paragraph 19 of the contract by a letter dated May 23, 2006.

11.     Despite said request, the Defendants, and each of them, have refused to allow the Plaintiffs to inspect books, records and facilities pursuant to Paragraph 19 and further failed to refund the wrongfully withheld compensation pursuant to the terms of the contract.

12.     That the Defendants, and each of them, have sent the commission reports reflecting unauthorized deductions from Plaintiffs' compensation through the mails and or/over the wires in contravention of interstate commerce.

13.     That the Defendants, and each of them, have transmitted written correspondence and contracts identifying inducements offered to prospective customers obtained by the Plaintiffs through the mails and over the wires in contravention of interstate commerce.

14.     That the Defendants' transmission of said inducements through the mails and over the wires in contravention of interstate commerce occurred on more than three occasions.

## DIVISION I.  FRAUDULENT MISREPRESENTATION.

15.     Plaintiffs replead paragraphs 1 through 14 of Plaintiff's Petition and incorporates herein by this reference as if fully set forth herein.

16.     That Defendants made statements as detailed below unto the principals of the Plaintiffs, and plaintiff's customers, concerning certain inducements that would be given by defendants to some of plaintiff's potential customers.

17.     That on or about May 9, 2005, customer Cody Gumm entered into a subscriber agreement with Plaintiffs. Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $175.00 so that customer Gumm's contract buyout with Verizon would result in no cost to customer and Plaintiffs relative to the customer changing providers.

18.     That on or about March 31, 2005, customer Alex Schenfeld entered into a subscriber agreement with Plaintiffs. Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $150.00 so that customer Schenfeld's contract buyout with Sprint would result in no cost to customer and Plaintiffs relative to the customer changing providers.

19.     That on or about May 31, 2005, customer John Norris entered into a subscriber agreement with Plaintiffs. Defendants' agent, Mark Hutton, represented over the telephone to

3

Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $300.00 so that customer Norris' two contract buyouts with US Cellular would result in no cost to customer and Plaintiffs relative to the customer changing providers.

20.    That on or about April 20, 2005, customer Harold Peterson entered into a subscriber agreement with Plaintiffs. Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $150.00 so that customer Peterson's contract buyout with Cingular would result in no cost to customer and Plaintiffs relative to the customer changing providers.

21.    That on or about June 18, 2005, customer Darrell Hopkins entered into a subscriber agreement with Plaintiffs. Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $175.00 so that customer Hopkins' contract buyout with Verizon would result in no cost to customer and Plaintiffs relative to the customer changing providers.

22.    That on or about February 16, 2005, customer Jeffrey Slechta entered into a subscriber agreement with Plaintiffs. Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $150.00 so that customer Slechta's contract buyout with US Cellular would result in no cost to customer and Plaintiffs relative to the customer changing providers.

23.    That on or about May 3, 2005, customer Charleen Hunt entered into a subscriber agreement with Plaintiffs. Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $175.00 so that customer Hunt's contract buyout with Verizon would result in no cost to customer and Plaintiffs relative to the customer changing providers.

24.     That on or about May 29, 2005, customer David Frohling entered into a subscriber agreement with Plaintiffs. Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $150.00 so that customer Frohling's contract buyout with US Cellular would result in no cost to customer and Plaintiffs relative to the customer changing providers.

25.     That on or about May 31, 2005, customer Beverly Jeffries entered into a subscriber agreement with Plaintiffs. Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $350.00 so that customer Jeffries' two contract buyouts with Verizon would result in no cost to customer and Plaintiffs relative to the customer changing providers.

26.     That on or about May 31, 2005, customer Michelle Chambers entered into a subscriber agreement with Plaintiffs. Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $350.00 so that customer Chamber's two contract buyouts with Verizon would result in no cost to customer and Plaintiffs relative to the customer changing providers.

27.     That on or about June 30, 2005, customer Randy Wacha entered into a subscriber agreement with Plaintiffs. Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $175.00 so that customer Wacha's contract buyout with Verizon would result in no cost to customer and Plaintiffs relative to the customer changing providers.

28.     That on or about May 20, 2005, customer Pella Precast Products entered into a subscriber agreement with Plaintiffs. Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the

amount of $600.00 so that customer Pella Precast Products' four contract buyouts with US Cellular would result in no cost to customer and Plaintiffs relative to the customer changing providers.

29.     That on or about June 12, 2005, customer Pella Precast Products entered into a subscriber agreement with Plaintiffs.  Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $175.00 so that customer Pella Precast Products' shipping and activation fees would result in no cost to customer and Plaintiffs relative to the customer changing providers.

30.     That on or about June 21, 2005, customer Kevin Frederick entered into a subscriber agreement with Plaintiffs.  Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $150.00 so that customer Frederick's contract buyout with US Cellular would result in no cost to customer and Plaintiffs relative to the customer changing providers.

31.     That on or about June 30, 2005, customer Teri McNeley entered into a subscriber agreement with Plaintiffs.  Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $350.00 so that customer McNeley's two contract buyouts with Verizon would result in no cost to customer and Plaintiffs relative to the customer changing providers.

32.     That on or about May 27, 2005, customer Brandy Krahn entered into a subscriber agreement with Plaintiffs.  Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $150.00 so that customer Krahn's contract buyout with US Cellular would result in no cost to customer and Plaintiffs relative to the customer changing providers.

33.     That on or about May 28, 2005, customer Scott Renaud entered into a subscriber agreement with Plaintiffs.  Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $300.00 so that customer Renaud's contract buyouts with each US Cellular and Sprint would result in no cost to customer and Plaintiffs relative to the customer changing providers.

34.     That on or about July 21, 2005, customer Susan Jones entered into a subscriber agreement with Plaintiffs.  Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $150.00 so that customer Jones' contract buyout with Sprint would result in no cost to customer and Plaintiffs relative to the customer changing providers.

35.     That on or about July 16, 2005, customer Ryan Davis entered into a subscriber agreement with Plaintiffs.  Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants credits in the amount of $370.00 so that customer Davis' two contract buyouts with US Cellular and required equipment upgrade would result in no cost to customer and Plaintiffs relative to the customer changing providers.

36.     That on or about May 28, 2005, customer John Taylor entered into a subscriber agreement with Plaintiffs.  Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $150.00 so that customer Taylor's contract buyout with US Cellular would result in no cost to customer and Plaintiffs relative to the customer changing providers.

37.     That on or about June 21, 2005, customer Mollie Schirman entered into a subscriber agreement with Plaintiffs.  Defendants' agent, Mark Hutton, represented over the

telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $150.00 so that customer Schirman's contract buyout with US Cellular would result in no cost to customer and Plaintiffs relative to the customer changing providers.

38.     That on or about May 25, 2005, customer Steve Oglesby entered into a subscriber agreement with Plaintiffs.  Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $150.00 so that customer Oglesby's contract buyout with US Cellular would result in no cost to customer and Plaintiffs relative to the customer changing providers.

39.     That on or about June 27, 2005, customer Devon Meyer entered into a subscriber agreement with Plaintiffs.  Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $150.00 so that customer Meyer's contract buyout with Sprint would result in no cost to customer and Plaintiffs relative to the customer changing providers.

40.     That on or about July 9, 2005, customer Bernard Keating entered into a subscriber agreement with Plaintiffs.  Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $150.00 so that customer Keating's contract buyout with US Cellular would result in no cost to customer and Plaintiffs relative to the customer changing providers.

41.     That on or about June 6, 2005, customer Josie Morin entered into a subscriber agreement with Plaintiffs.  Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $175.00 so that customer Morin's contract buyout with Verizon would result in no cost to customer and Plaintiffs relative to the customer changing providers.

42.     That on or about June 13, 2005, customer Brant Elding entered into a subscriber agreement with Plaintiffs.  Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $150.00 so that customer Elding's contract buyout with US Cellular would result in no cost to customer and Plaintiffs relative to the customer changing providers.

43.     That on or about May 25, 2005 and May 27, 2005, customer Colby Orman entered into a subscriber agreement with Plaintiffs.  Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants credits in the amount of $324.43 so that customer Orman's contract buyouts with each US Cellular and Verizon would result in no cost to customer and Plaintiffs relative to the customer changing providers.

44.     That on or about May 26, 2005, customer Raymond Dirksen entered into a subscriber agreement with Plaintiffs.  Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $175.00 so that customer Dirksen's contract buyout with Cingular would result in no cost to customer and Plaintiffs relative to the customer changing providers.

45.     That on or about October 21, 2005, customer Engineering Resource Group entered into a subscriber agreement with Plaintiffs.  Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $750.00 so that customer Engineering Resource Group's contract buyout with US Cellular would result in no cost to customer and Plaintiffs relative to the customer changing providers.

46.     That on or about May 28, 2005, customer Jeffery Wood entered into a subscriber

agreement with Plaintiffs.  Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $300.00 so that customer Wood's two contract buyouts with US Cellular would result in no cost to customer and Plaintiffs relative to the customer changing providers.

47.     That on or about June 3, 2005, customer Pamela Gifford entered into a subscriber agreement with Plaintiffs.  Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $150.00 so that customer Gifford's contract buyout with US Cellular would result in no cost to customer and Plaintiffs relative to the customer changing providers.

48.     That on or about June 1, 2005, customer Brian Carter entered into a subscriber agreement with Plaintiffs.  Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $175.00 so that customer Carter's contract buyout with Verizon would result in no cost to customer and Plaintiffs relative to the customer changing providers.

49.     That on or about February 28, 2005, customer American Security entered into a subscriber agreement with Plaintiffs.  Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs agent that the customer would be provided by Defendants credits in the amount of $2,024.90 so that customer American Security's seven contract buyouts with Verizon along with their equipment, shipment and activation charges would result in no cost to customer and Plaintiffs relative to the customer changing providers.

50.     That on or about July 21, 2005, customer Jenna Norvell entered into a subscriber agreement with Plaintiffs.  Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of

$525.00 so that customer Norvell's three contract buyouts with Verizon would result in no cost to customer and Plaintiffs relative to the customer changing providers.

51.    That on or about June 30, 2005, customer Michael Brown entered into a subscriber agreement with Plaintiffs. Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $300.00 so that customer Brown's two contract buyouts with US Cellular would result in no cost to customer and Plaintiffs relative to the customer changing providers.

52.    That on or about June 24, 2005, customer Brian Gilbert entered into a subscriber agreement with Plaintiffs. Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $175.00 so that customer Gilbert's contract buyout with Verizon would result in no cost to customer and Plaintiffs relative to the customer changing providers.

53.    That on or about July 23, 2005, customer Justin McElvaney entered into a subscriber agreement with Plaintiffs. Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $150.00 so that customer McElvaney's contract buyout with Sprint would result in no cost to customer and Plaintiffs relative to the customer changing providers.

54.    That on or about May 17, 2005, customer Joel Mathers entered into a subscriber agreement with Plaintiffs. Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $175.00 so that customer Mathers' contract buyout with Verizon would result in no cost to customer and Plaintiffs relative to the customer changing providers.

55.    That on or about March 31, 2005, customer Brandon Gillette entered into a

subscriber agreement with Plaintiffs.  Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $175.00 so that customer Gillette's contract buyout with Verizon would result in no cost to customer and Plaintiffs relative to the customer changing providers.

56.     That on or about June 22, 2005, customer O'Halloran Inc. entered into a subscriber agreement with Plaintiffs.  Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $450.00 so that customer O'Halloran Inc.'s three contract buyouts with US Cellular would result in no cost to customer and Plaintiffs relative to the customer changing providers.

57.     That on or about June 7, 2005, customer Thomas Company entered into a subscriber agreement with Plaintiffs.  Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $504.00 so that customer Thomas Company's two contract buyouts with US Cellular along with their shipping and activation would result in no cost to customer and Plaintiffs relative to the customer changing providers.

58.     That on or about December 28, 2005, customer Brent Bury entered into a subscriber agreement with Plaintiffs.  Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants a credit in the amount of $150.00 so that customer Bury's contract buyout with US Cellular would result in no cost to customer and Plaintiffs relative to the customer changing providers.

59.     That on or about December 30, 2005, customer Archer Home Center entered into a subscriber agreement with Plaintiffs.  Defendants' agent, Mark Hutton, represented in person to Plaintiffs' agent and the customer that the customer would be provided by Defendants a credit in

the amount of $1,575.00 so that customer Archer Home Center's nine contract buyouts with Verizon would result in no cost to customer and Plaintiffs relative to the customer changing providers.

60.     That on or about June 29, 2005, customer Lincoln Way Energy entered into a subscriber agreement with Plaintiffs.  Defendants' agent, Mark Hutton, represented in person to Plaintiffs' agent and the customer that the customer would be provided 11 months of free service on 22 of their unused phones in order to induce customer to execute a contract with Defendants company.   The customer was commencing its operations over the months following the contract and at the time of the contract only required 4 active phones but anticipated the need for 25 phones 11 months after contract inception.

61.     That on or about June 29, 2005, customer Van Haaften Plumbing and Heating entered into a subscriber agreement with Plaintiffs.  Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants credits in the amount of $1,485.00 so that customer Van Haaften's eight contract buyouts with US Cellular along with equipment, shipping and activation charges would result in no cost to customer and Plaintiffs relative to the customer changing providers.

62.     That on or about July 11, 2005, customer Marietta Distribution Co. entered into a subscriber agreement with Plaintiffs.  Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants service at a specific rate, credits in the amount of $7,439.42 so that customer Marietta Distribution Co.'s five contract buyouts with US Cellular along with equipment, shipping, activation charges and 4 months of free service on 10 unused phones would result in no cost to customer and Plaintiffs relative to the customer changing providers.

63.    That on or about June 21, 2005, customer Artistic Waste Management entered into a subscriber agreement with Plaintiffs.  Defendants' agent, Mark Hutton, represented over the telephone to Plaintiffs' agent that the customer would be provided by Defendants equipment trade in allowances and new equipment as more particularly identified on the subscriber agreement entered into with Artistic so that customer Artistic Waste Management's would execute a contract with defendants.    The estimated value of the inducement based on the information available at this time was $22,218.55.

64.    That on or about September 30, 2005, customer Jerald D. Grubb entered into a subscriber agreement with Plaintiffs.  Defendants' agent, Doug James, represented in person to Plaintiffs' agent and customer that the customer would be provided certain equipment more particularly identified in the Subscriber agreement executed by customer.

65.    That on or about December 9, 2004, customer Mahaska Communications Group entered into a subscriber agreement under Plaintiff's dealer code at the request of defendants. Thereafter the defendant's caused a new dealer code to be created and moved and activated new business of Mahaska under the new dealer code. The defendant's then proceeded to chargeback Plaintiff's for charges related to Defendant's moving Mahaska business to the new dealer code without the authorization or knowledge of the Plaintiff's. The chargebacks totaled approximately $3,600.00.

66.    That Plaintiffs relied on the representations made above by the Defendants and their reliance was justifiable.

67.    As a result of their representations, Plaintiffs conducted its business affairs and secured the business of plaintiff's customers relative to products offered by the defendants based on said representations.

68.     That the representations made by the Defendants were false and material in that it the defendants knew or should have known that they did not intend that the inducements be honored or that said inducements would not be honored, and as a result of Plaintiff's representations of the Defendants, the Plaintiffs have been damaged in the following particulars:

     i)     The defendants' have since the inception of the service agreements refused to honor the inducements offered to the customers of defendants secured by the plaintiffs either in a timely fashion, or at all, leading to damage to plaintiffs customer satisfaction and goodwill and lost business opportunity.

     ii)    Defendants, in those instances where the inducements were finally honored, wrongfully charged back plaintiffs for said inducements.

     iii)   Other damages as the evidence may support.

69.     That the representations made by the Defendants were willful and wanton and intentional and justified an award of punitive damages against the Defendants herein.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against the Defendants herein in an amount calculated by the Court to fully compensate Plaintiffs for the damages sustained as a result of the wrongful acts of the Defendants, punitive damages, attorneys' fees, plus interest at the rate allowed by law from the date of filing, and for such other and further relief as the Court deems equitable on the premises.

### DIVISION II.  RACKETEERING INFLUENCE AND CORRUPT ORGANIZATION (RICO).

70.     Plaintiffs replead paragraphs 1 through 69 and incorporates them herein by this reference as if fully set forth herein.

71.     Plaintiffs are an enterprise engaged in interstate commerce as defined in 18 U.S.C. Section 1341 (1999).

72.    That the Defendants, and each of them, conspired to devise a scheme and artifice to defraud for obtaining money and property by means of false or fraudulent pretenses and representations from the Plaintiffs and for the purpose of executing such scheme or artifice or attempting to do so placed in the United States Post Office or authorized depository for mail matter in violation of 18 U.S.C., Section 1341 (1999).

73.    That Defendants, and each of them, conspired to devise a scheme or artifice to defraud for obtaining money or property by means of false or fraudulent pretenses, representations, or promises and transmitted or caused to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, a writing, signal, sign, picture and/or sound for the purpose of executing such scheme or artifice in violation of 18 U.S.C., Section 1343 (1999).

74.    That the Defendants, and each of them, did on at least two separate occasions transmit false reports and information to the plaintiff's office utilizing the United States Postal Service and/or wires traveling through telephonic communication by facsimile, or by E-mail.

75.    The Defendants, and each of them, conspired and did transmit through the United States Postal Service, and by wire utilizing telephonic and internet communication, false and fraudulent representations and promises under false or fraudulent pretenses, information to at least five different customers of the Plaintiff and directly to the Plaintiff.

76.    That the acts of the Defendants in perpetrating the aforementioned constitutes a pattern of racketeering activity in violation of 18 U.S.C.A., Section 1962 and 18 U.S.C.A., Section 1961.

77.    As a result of the Defendants' activities, the Plaintiffs have been damaged.

78.    That pursuant to Section 18 U.S.C., Section 1964, Plaintiffs are entitled to

recovery from the Defendants three-fold the damages sustained and the costs of suit, including, reasonable attorneys' fees.

WHEREFORE, Plaintiffs respectfully request that the Court enter Orders consistent with the relief requested herein, including, but not limited to, entering judgment against the Defendants in an amount which will justly and equitably compensate them for the damages sustained as a result of the Defendants' activities, and further award Plaintiff's damages as allowed by law, and entering judgment for the costs of suit, including, but not limited, reasonable attorneys' fees and expenses, plus interest at the rate allowed by law from the date of filing, and for such and further relief as the Court deems equitable on the premises.

## DIVISION III.  BREACH OF CONTRACT

79.     Plaintiffs replead paragraphs 1 through 78 of Plaintiffs' Petition and incorporates them herein by this reference as if fully set forth herein.

80.     That pursuant to the terms of the contract the plaintiffs sold defendant's products to plaintiffs' customers.

81.     That pursuant to the terms of said contract certain payments were payable to plaintiffs by the defendants.

82.     That in addition, defendants agreed to provide certain inducements to some of plaintiffs customers.

83.     That despite the terms of the written agreement between plaintiffs and defendants, and written and verbal inducements offered to plaintiff's customers, the defendants and each of them, have breached  the terms of the agreements by failing to compensate plaintiffs in accordance with the agreement and not honoring inducements offered to plaintiff's customers.

84.     That as part of their agreement, the plaintiffs are entitled to inspect the books and

records of the defendants, upon request, and defendants have breached that provision of the agreement by refusing to allow said inspection.

85.     That the Defendants, and each of them, breached the aforementioned terms of the agreement between the parties.

86.     That as a result of the breach, Plaintiff has suffered and continues to suffer damages, including but not limited to compensatory damages, damages to defendants business, reputation and goodwill.

87.     Defendants breach of the agreement was willful and wanton and in reckless disregard for Plaintiff's rights, thereby entitling Plaintiff to punitive damages and attorneys fees.

WHEREFORE, Plaintiff respectfully requests that the Court enter a Judgment against the Defendants, and each of them, in an amount determined by the Court to be just and equitable on the premises and designed to fully compensate for the damages sustained by the Plaintiffs as a result of Defendants' actions, punitive damages and attorneys' fees, plus interest at the rate allowed by law from the date of filing, and for such other and further relief as the Court deems equitable on the premises.

## JURY DEMAND

COME NOW the Plaintiffs and hereby demand a trial by Jury.

Steven P. Brick   AT 0001084
BRICK, GENTRY, BOWERS, SWARTZ,
STOLTZE & LEVIS, P.C.
6701 Westown Parkway, Suite 100
West Des Moines, Iowa 50266
Telephone:  (515) 274-1450
Facsimile:  (515) 274-1488

_/s/_ _____

Christopher Spaulding  PK 1018026
BERG, ROUSE, SPAULDING & SCHMIDT,
P.L.C.
2423 Ingersoll Avenue
Des Moines, Iowa 50312
Telephone:  (515) 277-6559
Facsimile:  (515) 277-7536

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE:**

I hereby certify that on the 4th day of October, 2006, I electronically
filed the foregoing with the Clerk of the Court by using the CM/ECF
system which will send a notice of electronic filing to the following:

Michael R. Reck
Tricia A. Johnston
Belin Lamson McCormick Zumbach
Flynn, a Professional Corporation
The Financial Center
666 Walnut Street, Suite 2000
Des Moines, Iowa 50309-3989

ATTORNEYS FOR DEFENDANTS